**The below described is SIGNED.**

**Dated: March 30, 2007**

**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>SUSAN FERRE STAUFFER,<br><br>Debtor. | Bankruptcy No. 05-31187<br><br>Chapter 13 |

**MEMORANDUM DECISION ON AMERICAN GENERAL FINANCE OF UTAH, INC.'S MOTION TO AMEND PROOF OF CLAIM AND DEBTOR'S OBJECTION TO CLAIM OF AMERICAN GENERAL FINANCE OF UTAH**

### I.  JURISDICTION

Before the Court are two matters related to the only claim filed by a prepetition creditor in the confirmed chapter 13 case of Susan Ferre Stauffer (the "Debtor"). American General Finance of Utah, Inc. (AGF) has filed a Motion to Amend Proof of Claim (Motion to Amend), and the Debtor has countered with an Objection to Proof of Claim of American General Finance of Utah (Claim Objection). The parties' current dispute is a continuation of prepetition state court litigation, a nondishargeability proceeding filed by AGF under 11 U.S.C. § 523[1] in the Debtor's prior chapter 7 case, and previous disputes in this case related to the Debtor's confirmed chapter

---

[1]     All future references are to title 11 of the United States Code unless otherwise indicated.

13 plan. The Motion to Amend and the Claim Objection are core proceedings under 28 U.S.C. § 157(b)(2)(B), and the Court may enter a final order.

## II.  UNDISPUTED FACTS

On October 27, 2006, this Court issued a Memorandum Decision on AGF's Motion to Set Aside Confirmation Order, AGF's Motion for Relief From the Automatic Stay, the Debtor's Motion in Limine, and Objections to Proof of Claim #1 (First Memorandum Decision). This Court adopts the undisputed facts in the First Memorandum Decision and will include additional facts here as needed.

### A.    Additional Facts

AGF timely filed its unsecured proof of claim on September 12, 2005 for $17,263.41. After entry of the First Memorandum Decision, AGF filed its Motion to Amend and, shortly thereafter, the Debtor filed a third objection to AGF's claim. The parties scheduled and noticed out their hearings for February 1, 2007. Evidence was presented to the Court, and both counsel for AFG and counsel for the Debtor argued. At the hearing, Debtor's counsel informed the Court that after entry of the First Memorandum Decision in this case, the Debtor renewed her motion to dismiss in the still pending chapter 7 nondischargeability proceeding (04-2573), and the court dismissed the chapter 7 nondischargeability proceeding with prejudice on January 26, 2007.

### III. DISCUSSION

**A.     The Debtor's Claim Objection**

The Debtor has filed three separate objections to AGF's claim. The first two were filed on May 25, 2006 and June 1, 2006, respectively. Although the June 1, 2006 objection was styled as an "amended" objection, Debtor's counsel informed the Court at the October 26, 2006 hearing that the amended objection to AGF's claim was actually intended to supplement rather than supersede the original claim objection. The May 25, 2006 objection made the unusual request that AGF's claim be paid "as set forth in the Debtor's Plan" rather than as set forth in the proof of claim itself. The Debtor proposed paying 11% on the higher $45,500 amount listed on the Debtor's Schedule F rather than paying the lower $17,263.41 amount asserted in AGF's proof of claim. The June 1, 2006 objection added the request that AGF's claim be "disallowed to the extent that it seeks to establish the claim of American General Finance of Utah as a claim not dischargeable in this Chapter 13 case pursuant to 11 U.S.C. Section 1328." The May 25, 2006 and June 1, 2006 objections were overruled in the First Memorandum Decision: the May 25, 2006 objection because of improper notice and the June 1, 2006 objection because confirmation of the Debtor's plan rendered the status of the claim as nondischargeable moot. The Debtor filed a third objection to AGF's proof claim on December 20, 2006 indicating that the claim was "invalid as having been discharged in Debtor's Chapter 7 case (04-22407) in the event [AGF's] Adversary Proceeding (04-02573) is dismissed or as having been superseded by Debtor's statement of that claim in the amount of $45,500 in her Chapter 13 Plan in this case (05-31187)."

The Debtor's attorney asserts that the various claim objections are no longer relevant because dismissal of the chapter 7 nondischargeability proceeding resulted in discharge of AGF's

debt, and there is no longer a debt to pay through the Debtor's chapter 13 plan. After reviewing all of the documents filed in this case and making a review of applicable case law, this Court determines that the Debtor should be judicially estopped from taking the position that she no longer has to pay the AGF debt because it was discharged in the chapter 7 case. Judicial estoppel is "a discretionary remedy courts may invoke 'to prevent improper use of judicial machinery.'"[2] The invocation of judicial estoppel is appropriate in the following circumstance: "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'"[3] Although this equitable doctrine cannot be distilled into any specific elements, courts have typically employed the following factors to determine when to apply judicial estoppel: "(1) the party's later position is clearly inconsistent with his earlier position; (2) the party has succeeded in persuading a court to accept the earlier position, so as to create the perception that either the first or second was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if he were not estopped."[4]

---

[2]   *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068-69 (10th Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. 742 (2001)) (other citations and quotations omitted).

[3]   *Id.* at 1069 (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

[4]   *Riazuddin v. Schindler Elevator Corp. (In re Riazuddin)*, Nos. 06-011, 04-22822-NLJ, ___ B.R. ___, 2007 WL 441772 at *4 (10th Cir. BAP Feb. 12, 2007) (finding that the doctrine of judicial estoppel was inapplicable to the facts of the case). The Bankruptcy Appellate Panel for the Tenth Circuit refers to these three factors as the *New Hampshire* factors because they were set forth by the United States Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742 (2001).

### 1. The Debtor's Original Position

In order to apply the doctrine of judicial estoppel, it must be evident that the party being estopped has taken a certain position in the legal proceeding. Since the inception of this chapter 13 case, it has been the Debtor's position that she intended to repay AGF's claim through her chapter 13 plan. The Debtor's proposed plan indicated that general unsecured creditors would receive a distribution of 11% on their claims. At the time the chapter 13 case was filed, AGF was the Debtor's only remaining creditor. The Debtor's proposed plan was confirmed without objection on September 29, 2005,[5] about two weeks after AGF's claim was filed. On April 10, 2006, the Debtor filed a Declaration of Review of Claim (Declaration) indicating that all claims had been reviewed. While this Declaration indicates an objection of some sort to the amount of AGF's filed claim, it also indicates an intent to pay 11% of some amount through the plan to AGF.[6]

The Debtor's intent to repay the AGF claim is also apparent when reviewing the claim objections filed in this case. The May 25, 2006 claim objection states: "Debtor Susan Stauffer, by and through her attorney of record, hereby files her Objection to the Proof of Claim of [AGF] filed herein on grounds said claim should not be paid in full but as set forth in the Debtor's Plan."

---

[5] The Court presumes, since there was no other activity in the case until AGF filed its Motion to Set Aside Confirmed Chapter 13 Plan on Lack of Due Process Grounds or, In the Alternative, to Vacate or Amend the Order of Confirmation and for a Determination that Judgment of Nondischargeability Apply Equally to Debtor's Chapter 13 Proceeding (AGF's Motion to Set Aside), that the Debtor was successfully prosecuting her plan by making her plan payments. The chapter 13 trustee also stated at the October 26, 2006 hearing that the Debtor was current on all plan payments.

[6] The Declaration states that the Debtor objects to the "full payment of the Proof of Claim amount filed by [AGF] and believes that the claim, as set forth in the Debtor's Plan, is accurate and should be paid a dividend of 11%." There is, however, no specific amount of AGF's claim set forth in the Debtor's Plan.

Even as late as December 20, 2006 when the third claim objection was filed, the Debtor argued that either the claim was discharged *or* that the claim as filed was "superseded by the Debtor's statement of that claim in the amount of $45,500 in her Chapter 13 plan . . . ." Both claim objections make clear that the Debtor intended to repay AGF, in some amount, through her chapter 13 plan.

This position is repeatedly taken in the Debtor's various other pleadings. In response to AGF's argument that the parties should resolve the issues surrounding AGF's debt in the chapter 7 nondischargeability proceeding, counsel for the Debtor writes that the "creditor's recourse is to file its claim [in the chapter 13 case]. In this case the Debtor's Chapter 13 Plan recognizes the creditor's claim and is paying it through the Chapter 13 trustee."[7] Debtor's counsel goes on:

> Creditor argues that the Chapter 7 adversary proceeding is not stayed. Even if the Adversary Proceeding were not be [sic] stayed by the operation of 11 U.S.C. § 362, the Adversary Proceeding is, nevertheless, moot because it seeks relief that cannot be granted while the Debtor is paying [AGF's] claim in the Debtor's confirmed Chapter 13 Plan. At best, [AGF] can only claim that its adversary proceeding in the Chapter 7 case is in abeyance. If the Chapter 13 case is consummated, then the Debtor will receive a discharge, and the Chapter 7 adversary proceeding can be dismissed because the claim will have been paid through the Chapter 13 case. If the Chapter 13 case is not consummated, then the creditor may continue with the Chapter 7 adversary proceeding for nondischargeability in the absence of a Chapter 13 discharge unless the adversary proceeding is dismissed for lack of prosecution.[8]

Again on page 4 of the Debtor's response, the Debtor admits that "[r]ather than pay the expenses of the original lawsuit brought against her by [AGF] or the expenses of the Adversary Proceeding filed in her prior Chapter 7 case, Debtor filed this Chapter 13 case in order to pay as much of

---

[7]   Debtor's Resp. to AGF's Mot. to Set Aside at 5.

[8]   Debtor's Resp. to AGF's Mot. to Set Aside at 6.

[AGF's] claims [sic] as possible given her limited income." In responding to AGF's Motion to Set Aside and AGF's Motion for Relief From Stay, the Debtor admitted that her proposed plan would return $4,896.80 to AGF (or 11% of $45,5000),[9] and that she is in fact "permitted" by United States Supreme Court case law "to include in her Chapter 13 case the claim of [AGF] that formed the basis of its pending nondischargeability action."[10] Finally, at the October 26, 2006 hearing, Debtor's counsel stated that it was the Debtor's intent to pay AGF's claim through her plan.[11] By that time, the Debtor's position was twofold: (1) that she intended to pay AGF's claim through her plan; and (2) that any further liquidation of the claim would be resolved in the chapter 13 case.

### 2. The Debtor's Inconsistent Position

Contrary to her original position as stated on the record at the October 26, 2006 hearing, the Debtor later took two inconsistent actions. On December 14, 2006, the Debtor renewed her Motion to Dismiss Adversary Proceeding with Prejudice (Motion to Dismiss) in the nondischargeability proceeding. Then on December 20, 2006, the Debtor filed a third objection to AGF's claim indicating that the claim should be disallowed as filed because either AGF's debt was discharged in the chapter 7 case, or the proof of claim was superseded by the Debtor's chapter 13 plan. The Debtor's renewed Motion to Dismiss was granted on January 26, 2007, and the chapter 7 nondischargeability proceeding was dismissed with prejudice. At the February 1, 2007 hearing before this Court, Debtor's counsel argued for the first time that AGF's debt had

---

[9] Debtor's Mem. In Supp. of Debtor's Obj. at 5

[10] Debtor's Mem. In Supp. of Debtor's Obj. at 11.

[11] ECRO Court's Digital Recording System, October 26, 2006 at 9:56 a.m. - 10:00 a.m.

been discharged in the chapter 7 case because the chapter 7 nondischargeability proceeding had been dismissed, and there were no general unsecured claims to be paid through the confirmed chapter 13 plan. This position was clearly inconsistent with the Debtor's prior representations that AGF's claim would be liquidated and paid through the chapter 13 case. The Debtor was only able to assert this new position because she had renewed her Motion to Dismiss, rather than continuing the nondischargeability proceeding in abeyance as she had previously indicated would occur when she argued that the nondischargeability proceeding was moot because it sought relief that could not be granted while the Debtor was paying AGF's claim in the Debtor's confirmed chapter 13 Plan. The Debtor did this shortly after this Court denied AGF's Motion to Lift the Automatic Stay to further litigate the chapter 7 nondischargeability proceeding, and shortly after this Court ruled that any further litigation regarding AGF's claim should be and would be resolved in the context of the chapter 13 case.[12]

### 3. The Court's Reliance on Debtor's Original Position

A review of the record shows that this Court relied on the Debtor's repeated representations that she intended not only to pay the AGF claim through her chapter 13 plan but that any further liquidation of the claim would be handled not in the chapter 7 nondischargeability proceeding but through the chapter 13 claim objection process. In the First Memorandum Decision, this Court stated:

> Finally, no 'cause' has been shown for lifting the automatic stay to allow AGF to proceed with seeking its nondischargeability judgment in the chapter 7 adversary proceeding. The Debtor is complying with the terms of her confirmed plan and is

---

[12] In the nondischargeability proceeding the court had ruled that if the Debtor was successful in defending against AGF's motions in the chapter 13 case, the Debtor could renew her Motion to Dismiss the chapter 7 nondischargeability proceeding. The Debtor has not argued that she was required to do so.

> current on plan payments. And no purpose would be served by entry of a nondischargeability judgment in the chapter 7 adversary proceeding under § 523(a)(2), (4), or (6), because any such debts are fully dischargeable in this chapter 13 case and the nature of the debt is now immaterial as a result of the *res judicata* status of the confirmation order.
>
> Thus, the only possible reason for continuing with the chapter 7 adversary proceeding is to establish the amount of the claim that must be paid in this case. But the amount of the claim is fixed by AGF's filed proof of claim, has not yet been properly objected to or amended, and has been allowed pursuant to § 502(a) in the amount of $17,263.41. . . .
>
> Given the procedural posture of this case, the Court believes that it is appropriate for any further claims litigation to be resolved in the context of the chapter 13 case rather than the chapter 7 adversary proceeding. This may arise by way of a claim objection of the Debtor that is properly noticed and responded to, or it may arise by way of the Debtor's objection to any amended proof of claim that AGF may attempt to file in this case. Either way, the issue of AGF's claim amount is not yet ripe for this Court's consideration.[13]

The judicial reliance component of judicial estoppel "requires that the party to be estopped succeeded in persuading a court to accept his earlier inconsistent position."[14] This Court denied AGF's motions in its First Memorandum Decision because, *inter alia*, all parties intended to resolve any further claims litigation in the context of the chapter 13 case. In fact, the Court refused to lift the automatic stay in AGF's favor finding AGF had not established "cause" to return to the chapter 7 nondischargeability proceeding to liquidate or further adjudicate AGF's claim. The Debtor had succeeded in convincing this Court that all further litigation surrounding AGF's claim would occur in the context of the chapter 13 case. Contrary to that position, the Debtor voluntarily renewed her Motion to Dismiss the chapter 7 nondischargeability proceeding which was granted. The Debtor has now returned asking this Court to find that there is no AGF

---

[13] First Mem. Dec. at 9-10.

[14] *Riazuddin*, 2007 WL 441772 at *5.

debt to repay because the Debtor has received a § 727 discharge of her prepetition debts. In the first instance, the Debtor admitted that she owes a debt to AGF and that she intended to repay it. The Court relied upon and accepted that position when it issued its First Memorandum Decision. But now the Debtor has returned to argue that, in spite of seeking refuge in chapter 13 to avoid defending the chapter 7 nondischargeability proceeding, the debt has been discharged. This new argument contradicts the Debtor's original position, and the Debtor was only able to make this new argument by manipulating the two pending cases. The Debtor has admitted that the only reason for filing the chapter 13 case was to stop the chapter 7 nondischargeability proceeding and to repay her debt to AGF. Had the chapter 13 not been filed, default may have been entered against the Debtor in the chapter 7 nondischargeability proceeding and the debt could have been declared nondischargeable. Accepting the Debtor's new position that AGF's claim should be disallowed because the debt has now been discharged would require this Court to make a determination that is inconsistent with its First Memorandum Decision. Avoiding such inconsistent determinations is at the heart of the doctrine of judicial estoppel.

### 4. Prejudice to AGF

The final factor to consider is whether the Debtor derives an unfair advantage or imposes an unfair detriment on AGF were the Debtor not estopped. If this Court adopts the Debtor's new argument that the debt owed to AGF was discharged in the Debtor's chapter 7 case, AGF would receive no distribution under the Debtor's chapter 13 plan — its claim would simply disappear. Such a result is clearly detrimental to AGF. That detriment becomes unfair when viewed in the context of the case. Both parties and the Court adopted the Debtor's position that AGF's claim, in some amount, would be paid through the chapter 13 plan. When the Debtor renewed her

Motion to Dismiss in the chapter 7 nondischargeability proceeding, AGF did not oppose it. Such action would have been consistent with AGF's understanding that the claim would be liquidated and paid through the chapter 13 case, and consistent with this Court's recent denial of AGF's Motion to Lift the Automatic Stay to further litigate the chapter 7 nondischargeability proceeding. The Debtor now argues that there is no debt. Because AGF relied on the Debtor's representations that its claim would be paid through her plan, it would be unfair to eviscerate that claim now that the Debtor used the Motion to Dismiss as a sword in the chapter 7 nondischargeability proceeding which she previously sought to avoid and which AGF was precluded from defending because of the automatic stay.[15]

Judicial estoppel "is designed to protect the integrity of the court system."[16] The Debtor convinced this Court that she intended to pay AGF through her chapter 13 plan and that any further claims litigation would occur in the chapter 13 plan. As a result, this Court issued its First Memorandum Decision adopting the Debtor's position. The Debtor would now have this Court sustain her claim objection because that debt, which the Debtor admitted was valid and which was the *only* reason the Debtor filed the chapter 13 case, has now been discharged. In light of these contradictory positions, this Court finds that in order to protect the integrity of this Court and its previous rulings, that the Debtor should be estopped from asserting that the AGF claim cannot be

---

[15] The Debtor's chapter 7 discharge injunction "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect recover or offset any such debt **as a personal liability of the debtor**, whether or not discharge of such debt is waived." *See* § 524(a)(2) (emphasis added).

[16] *Riazuddin,* 2007 WL 441772 at *4.

paid because it was discharged in her chapter 7 case.[17] As a result, the portion of the Debtor's third claim objection asserting that AGF's debt has been discharged is overruled.

### B. Valuation of AGF's Claim and AGF's Motion to Amend

The Court has established that the Debtor must pay something to AGF through her chapter 13 plan and, therefore, must now determine the amount of AGF's claim. Under § 502, a timely filed proof of claim is allowed if no party in interest objects. If an objection is filed, the Court "after notice and a hearing, shall determine the amount of such claim . . . as of the date of filing the petition, and shall allow such claim."[18] Rule 3001 fleshes out the claims filing process and indicates that a properly filed proof of claim is *prima facie* evidence of the validity and amount of the claim. In order to enjoy this presumption, an unsecured claim that is based on a writing must be in writing, must substantially conform to Official Form 10, and must be executed by the creditor or the creditor's authorized agent. AGF's proof of claim meets all of these requirements and is, therefore, considered *prima facie* evidence of the validity and amount of the claim.

The Debtor, however, has filed three objections to AGF's proof of claim objecting for three different reasons. First, the Debtor argues that the amount of AGF's debt should be paid as provided in the Debtor's plan (more specifically the $45,500 listed in the Debtor's schedules) and not as set forth in the proof of claim. Second, the Debtor objects to the extent the creditor

---

[17] This decision is reached giving due respect to the Code's fundamental principles that discharged debt cannot be collected outside the umbrella of the bankruptcy system. Certainly if this chapter 13 case ceases to exist prior to the Debtor obtaining her chapter 13 discharge, the obligation she owed to AGF could not be collected.

[18] Section 502(b).

attempts to establish that any portion of the debt is nondischargeable. And finally, the Debtor objects because the claim was discharged in the chapter 7 case. The Court's analysis of judicial estoppel resolves the second and third reasons for objection, so it is now left to the Court to determine the amount of the claim as of the petition date.

As stated above, AGF's proof of claim is *prima facie* evidence of the validity and amount of the claim. The Debtor has objected to AGF's proof of claim and now has the burden of coming forward with evidence to support its objection and to rebut the proof of claim. "[T]o negate the presumption of [Rule 3001], the [Debtor] must mirror the criteria set forth in [Rule 3001]."[19] The substance of the Debtor's objection is that the claim should be paid not as filed but as provided in her confirmed chapter 13 plan. No specific amount was listed in the chapter 13 plan, but $45,500 was listed in the Debtor's schedules, and the chapter 13 plan proposed to pay such creditors 11% of their claims. Debtor's counsel did state that the amount of AGF's claim to be paid was based on the principal amount owed plus some unspecified amount of accrued interest. But the Debtor has not come forward with any other evidence to rebut the *prima facie* validity and amount of AGF's proof of claim. As a result, the Court finds that AGF's proof of claim as filed represents the correct amount of the claim.[20]

The Debtor could argue that the *res judicata* effect of her confirmed plan requires the claim to be paid at the amount proposed in the plan and schedules of 11% of $45,500. The

---

[19] *In re Cluff*, 313 B.R. 323, 336 (Bankr. D. Utah 2004) (Boulden, J.), *aff'd Cluff v. eCast Settlement*, 2006 WL 2820005 (D. Utah Sep. 29, 2006).

[20] In this district, a creditor or a debtor is required to file a proof of claim on the creditor's behalf in order for an unsecured creditor to receive distributions under the plan. Including the proposed amount of repayment and dividend in the plan are insufficient to fulfill the debtor's requirements under § 501(c), Rule 3004 if no proof of claim is filed, or under the informal proof of claim doctrine. *See In re Briggs*, 95B-23778 (June 28, 1996).

Uncontested Order Confirming Debtor's Chapter 13 Plan entered on September 29, 2005 provides: "With respect to allowed claims other than secured claim [sic], the amount of the allowed claim will be as determined through the claims allowance process, not as specified in the plan, but the interest rate, percentage of payment and other payment terms for such other allowed claims, will be as specified in the plan."  In July 2005, this Court implemented an early confirmation process in which chapter 13 plans would be submitted for confirmation prior to the claims bar date running in the case.  The above-quoted language was inserted into the uncontested confirmation orders to ensure that the claims litigation process could be completed and the amount of allowed claims determined under § 502 without the confirmed plan controlling the amount to be paid on unsecured claims.  The plan has no *res judicata* effect on the principle amount of an unsecured claim until the Court makes a determination regarding the status of the claim, i.e., whether the claim is an allowed claim.

The final issue before the Court is whether AGF should be allowed to amend its proof of claim.  In determining whether a claim should be amended the Court must consider: (1) whether the claim is amendable; and (2) whether the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable.[21]  If the purpose of the amendment is to cure a defect and there is no prejudice to the party opposing the amendment, then the Court should freely grant requested amendments.[22]  AGF's original proof of claim was filed before the claims bar date, and it was properly executed and

---

[21] *Unioil, Inc v. H.E. Elledge; 270 Corp. (In re Unioil Inc.)*, 962 F.2d 988, 992 (10th Cir. 1992).

[22] *United States v. Berger (In re Tanaka Brothers Farms, Inc.)*, 36 F.3d 996, 998 (10th Cir. 1994).

signed by an officer of American General. The documents attached to the proof of claim are a bit cryptic, but it is clear from the proof of claim that AGF is asserting an unsecured claim against the estate in the amount of $17,263.41. The claim is amenable.

AGF's proof of claim provided the Debtor with notice of the existence of AGF's claim, the nature of the claim (an unsecured debt), and AGF's intent to hold the estate liable for the claim. But according to both the Debtor's and creditor's calculations, AGF's proof claim significantly underestimated the amount of the unsecured debt. AGF now asks this Court to allow it to file an amended proof of claim which includes the following: $41,446.94 in principal, $10,731.43 in interest, $533.10 in costs, and $12,165 in fees totaling $64,876.47. The Debtor asserted in her claim objections that AGF is entitled to a claim of $45,500 based on principal and interest.

Whether the Court should allow AGF to amend its claim now depends upon the following: whether AGF provided sufficient notice of the amount of the claim; whether AGF is simply trying to cure a defect; and whether the amendment unfairly surprised the Debtor and will prejudice her. AGF's filed proof of claim lists an unsecured amount of $17,263.41.[23] The document filed in support gives no indication of whether that amount includes interest, attorney's fees, or costs. "[T]o be within the scope of a permissible amendment, the second claim should not only be of the same nature as the first but also reasonably within the amount to which the first claim provided

---

[23] The filed proof of claim appears to include a payoff amount of $12,263.41, a charge amount of $5,000, and charged off amount of $11,988.92. The Court makes no specific finding as to these amounts or whether it has accurately characterized the amounts. This information is included only for the purpose of making a record.

notice."[24] The difference in amount between AGF's filed claim and the proposed amendment is an additional $47,613.06 over the claim as filed, and $19,376.47 greater than the amount the Debtor anticipated the debt to be. Both are significant amounts not reasonably within the amount of the original proof of claim. Also, there is no indication that the amount listed in the filed proof of claim is an estimated, unliquidated, or a contingent amount that might be subject to further amendment.[25] As a result, AGF did not give the Debtor sufficient notice of the amount of its amended claim. Furthermore, it does not appear that AGF is merely attempting to cure any other defect in its original proof of claim. The filed proof of claim was properly executed, timely filed, and it appears to be liquidated. AGF has not isolated a defect (other than the amount) that it intends to cure.

AGF's request for an amendment does not unfairly surprise the Debtor in the sense that the Debtor did not rely on the proof of claim as filed in calculating feasibility of her plan, but the increased amount of $19,376.47 is significantly greater than any amount previously claimed or anticipated in this case. More importantly, there would be actual prejudice to the Debtor if the Court allows the amendment. At the February 1, 2006 hearing, the Court inquired whether the proposed amendment would render the plan unfeasible. After running the calculations, creditor's counsel stated that an 11% return of the proposed $64,876.41 would be $7,136.41. The Debtor's confirmed plan provides for plan payments of $117/month for 60 months or a total of $7,020 over

---

[24] *In re AM. Int'l, Inc.,* 67 B.R 79, 82 (citing *In re International Horizons, Inc.,* 751 F.2d 1213, 1217-18 (11th Cir. 1985)).

[25] *See Tanaka Brothers*, 36 F.3d at 1000 (holding that the Internal Revenue Service's claim was amendable because the original claim was an estimation of the amount due and the creditor "showed diligence in promptly filing its amended proof of claim.")

the length of the plan. Even without including the Debtor's unpaid attorney's fees of $1,000 or the chapter 13 trustee's administrative costs (which are both paid through the plan), there is a shortfall of $116.41. Contrary to creditor's counsel's conclusion at the hearing, the calculations above demonstrate that the proposed amendment renders the plan unfeasible. Allowing the amendment and destroying feasibility of the plan after the Debtor has been successfully prosecuting her plan for over a year and a half would be prejudicial to the Debtor. There is also the issue of timing. It took AGF approximately fourteen months after filing its claim to file its Motion to Amend. During this period, the Debtor was making payments to the trustee, paying off administrative fees, and presumably providing funds to make payments to AGF once its claim was resolved. Allowing an amendment this late in the game that renders the plan unfeasible would be prejudicial to the Debtor.

In addition to the factors listed above, there are other equitable factors that support denial of the amendment. The *Tanaka Brothers* court considered the following equitable factors in determining whether to allow a creditor to amend its original proof of claim.[26] The first factor is whether the parties or creditors relied on the initial claim or whether they knew subsequent proofs of claim would be filed. As stated above, it is apparent that the Debtor knew that the original proof of claim was wrong and that she did not rely on it. The second factor is whether other creditors would receive a windfall to which they are not entitled on the merits by the court not allowing the amendment. This factor is not applicable because AGF is the only creditor in this case. The third factor is whether the creditor intentionally or negligently delayed in filing the amendment. In its First Memorandum Decision this Court found that adequate notice of the

---

[26] *Id.* at 998-99.

chapter 13 filing was given to AGF. AGF timely filed its original proof of claim but it took approximately fourteen months to file its Motion to Amend. This factor weighs against AGF. The fourth factor is whether the justification, if any, for the failure to request the timely extension of the bar date. AGF would probably argue that it failed to amend because it did not get notice of the chapter 13 filing. This Court has already refused to accept that argument finding instead that AGF did receive adequate notice of the filing. This factor also weighs against AGF. Two of the four equitable factors weigh against AGF, the other does not count, and other evidence in the record indicates that the Debtor will suffer actual prejudice by allowing AGF to amend its claim. Accordingly, the Court finds that AGF has failed to show that it is entitled to amend its claim.

## IV.  CONCLUSION

For all the foregoing reasons, the Claim Objection is OVERRULED, and AGF's Motion to Amend is DENIED. The Court shall issue a separate Order to this effect.

-------------------------------END OF DOCUMENT-------------------------------

_____ooo0ooo_____

SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION ON AMERICAN GENERAL FINANCE OF UTAH, INC.'S MOTION TO AMEND PROOF OF CLAIM AND DEBTOR'S OBJECTION TO CLAIM OF AMERICAN GENERAL FINANCE OF UTAH** will be effected through the Bankruptcy Noticing Center to each party listed below.

Susan Ferre Stauffer
1631 West Rundquist Drive
West Jordan, UT 84084
 *Debtor*

Kenneth R. Ivory
Kathie Brown Roberts
9615 South 700 East
Sandy, UT 84070
 *Counsel for Creditor AGF*

J. Vincent Cameron
47 West 200 South
Suite 600
Salt Lake City, UT 84101
 *Chapter 13 Trustee*

Paul James Toscano
Boston Bldg., Suite 419
9 Exchange Place
Salt Lake City, UT 84111
 *Counsel for Debtor*

American General Finance
P.O. Box 3251
Evansville, IN 47731